IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

KATHY L. CROWELL,

                Plaintiff,

v.                                             CIVIL ACTION NO.  2:12-cv-06072

ANALYTIC BIOSURGICAL SOLUTIONS,
et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendant Analytic Biosurgical Solutions' ("ABISS") Motion to Dismiss [Docket 28]. The plaintiff filed a response, ABISS filed a reply, and the motion is ripe. For the reasons stated below, ABISS's Motion to Dismiss [Docket 28] is **GRANTED**.

**I.    Background**

This case is one of several thousand assigned to me by the Judicial Panel on Multidistrict Litigation. These MDLs involve the use of transvaginal surgical mesh to treat pelvic organ prolapse or stress urinary incontinence. In this case, the plaintiff Kathy Crowell alleges that she suffered injuries as a result of the Aris Transobturator Tape System that was implanted in her. ABISS is a French company that manufactures shaped surgical mesh. (Decl. of Jean-Marc Beraud [Docket 28-1], at ¶ 3). This mesh is sold to Coloplast A/S, a Danish Corporation.[1] *Id.* Coloplast A/S takes ownership of the mesh at the ABISS facility in France and arranges for the mesh to be shipped from there. (*Id.* at ¶¶ 4-5). ABISS has no involvement with the distribution or marketing of the mesh within the United States. (*Id.* at ¶ 6). In his declaration, Jean-Marc

---

[1]     Coloplast A/S and Coloplast Manufacturing, US, LLC were dismissed without prejudice by Pretrial Order # 28.

Beraud, the founder of ABISS, stated that he "understand[s]" that ABISS sold its Aris Mesh to another defendant, Mentor Corp., from 2005 to 2007. (*Id.* at ¶ 3). Coloplast A/S is the successor to Mentor Corp. (*Id.*). ABISS entered into an exclusive supply agreement with Coloplast A/S on August 22, 2007. (*Id.*). The plaintiff's Complaint against ABISS alleges the following causes of action: negligence; strict liability-design defect; strict liability-manufacturing defect; strict liability-failure to warn; breach of express warranty; breach of implied warranty; fraud; constructive fraud; negligent misrepresentation; unjust enrichment; injunctive relief; punitive damages; and discovery rule, tolling and fraudulent concealment. (*See* Compl. [Docket 1]). In the instant motion, ABISS seeks to quash service of process and dismiss the plaintiff's Complaint against it. ABISS asserts that service of process was neither timely nor proper, that there is no basis for personal jurisdiction, and that the plaintiff's Complaint is time-barred under Tennessee's statute of limitations. (*See* Mem. in Supp. of Mot. to Dismiss [Docket 29], at 1).[2]

## II. Legal Standard

### A. Motion to Dismiss

When a defendant moves to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, "the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). When the court addresses the jurisdictional question based on the "motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.* In those circumstances, "courts must construe all

---

[2] As discussed in this Memorandum Opinion and Order, ABISS's motion to dismiss is granted on the basis of lack of personal jurisdiction. Accordingly, I need not address the service of process or statute of limitations arguments raised by ABISS.

relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* (internal quotation marks omitted).

### B. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pre-trial motions. In multidistrict litigation cases such as this, personal jurisdiction is determined by reference to the law of the transferor forum. *In re Plumbing Fixtures Litig.*, 342 F. Supp. 756, 758 (J.P.M.L. 1972). Specifically, "in cases that are consolidated for pretrial purposes under 28 U.S.C. § 1407, a transferee court can exercise personal jurisdiction only to the same extent as the transferor court could." *In re Sterling Fisher & Co., Inc. Sec. Litig.*, 222 F. Supp. 2d 289, 300 (E.D.N.Y. 2002). Therefore, I apply Tennessee law for the purpose of determining the issue of personal jurisdiction.

### C. Personal Jurisdiction

For a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. First, a state's long-arm statute must authorize jurisdiction over the non-resident defendant. Second, the court's exercise of personal jurisdiction over the non-resident defendant must "not deny the defendant due process." *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003) (citations and internal quotation marks omitted). The Tennessee long-arm statute has been "construe[d] to extend to the limits of due process." *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001). Consequently, the statutory inquiry merges with the constitutional inquiry, and the court must determine whether exercising personal jurisdiction over the defendant is consistent with the Due Process Clause. *See id.*

"In order for there to be jurisdiction consistent with due process, [the plaintiff] must have

sufficient minimum contacts with Tennessee so that 'traditional notions of fair play and substantial justice' are not offended." *Id.* at 331 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). The Supreme Court has recognized that this protection provided by the Due Process Clause extends to foreign corporations. *See Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2852–54 (2011).

There are two approaches to finding jurisdiction over persons outside a state's borders: specific and general jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 n. 15. (1985). If the suit does not arise out of the defendant's contacts with the state, the defendant must have "continuous and systematic" contacts with the state to confer general jurisdiction. *Aristech Chem Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998). On the other hand, if the defendant's contact with the state is the basis of the suit, then specific jurisdiction applies. *Burger King*, 471 U.S. at 472. The Sixth Circuit applies a three-part inquiry to determine whether specific jurisdiction exists: (1) "the defendant must purposefully avail [itself] of the privilege of acting in the forum state or causing a consequence in the forum state;" (2) "the cause of action must arise from the defendant's activities there;" and (3) "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir.1968). "Failure to satisfy any one of the *Southern Machine* elements 'means that personal jurisdiction cannot be invoked.'" *In re Reciprocal of Am. (ROA) Sales Practices Litig.*, No. MDL 1551, Civ.A.04-2078, 2005 WL 1140737, at *3 (W.D. Tenn. May 12, 2005) (citing *Southern Sys., Inc. v. Torrid Oven Ltd.*, 58 F. Supp. 2d 843, 848 (W.D.Tenn.1999)).

**III.  Analysis**

### A. Personal Jurisdiction over ABISS

There are no allegations that ABISS is subject to general jurisdiction in Tennessee, nor is there sufficient basis for such a finding. *See Goodyear*, 131 S. Ct. at 2853–54 (stating that a corporation is subject to general jurisdiction in a forum "in which the corporation is fairly regarded as at home"). Thus, the inquiry centers on whether ABISS is subject to specific jurisdiction in Tennessee.

A recent decision of the United States Supreme Court is relevant to the instant personal jurisdiction analysis. In *J. McIntyre Machinery, Ltd. v. Nicastro*, the United States Supreme Court considered whether New Jersey had personal jurisdiction over a foreign manufacturer. 131 S. Ct. at 2785 (2011).[3] The New Jersey Supreme Court found that New Jersey's courts could exercise personal jurisdiction over a foreign manufacturer "so long as the manufacturer 'knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states.'" *Id.* (quoting *Nicastro v. McIntyre Mach. Am., Ltd.*, 987 A.2d 575, 591–92 (N.J. 2010)). Applying this logic, the New Jersey Supreme Court "concluded that a British manufacturer of scrap metal machines was subject to jurisdiction in New Jersey, even though at no time had it advertised in, sent goods to, or in any relevant sense targeted the State." *Id.*

The United States Supreme Court reversed, finding no personal jurisdiction. *Id.* (plurality opinion); *id.* at 2791 (concurring opinion). Justice Kennedy delivered the plurality opinion with three Justices joining. *Id.* at 2783. Justice Breyer delivered an opinion, joined by Justice Alito, concurring in the judgment. *Id.* at 2791. Justice Ginsburg delivered an opinion, joined by two

---

[3] The plaintiff's response brief does not address either *Goodyear* or *J. McIntyre*. Rather, the plaintiff argues, based on a number of pre-2011 cases, that "[i]f a foreign manufacturer places products into the 'stream of commerce' with the expectation that it would end up in the forum, the foreign manufacturer may be subject to personal jurisdiction in the forum's courts." (Mem. in Opp'n to ABISS's Motion to Dismiss [Docket 32], at 8-9).

Justices, dissenting. *Id.* at 2794. In *J. McIntyre*, Nicastro's counsel stated several facts in support of the state's assertion of jurisdiction:

> First, an independent company agreed to sell J. McIntyre's machines in the United States. J. McIntyre itself did not sell its machines to buyers in this country beyond the U.S. distributor, and there is no allegation that the distributor was under J. McIntyre's control.
>
> Second, J. McIntyre officials attended annual conventions for the scrap recycling industry to advertise J. McIntyre's machines alongside the distributor. The conventions took place in various states, but never in New Jersey.
>
> Third, no more than four machines . . . , including the machine that caused the injuries are the basis for this suit, ended up in New Jersey.

*Id.* at 2786. Additionally, the New Jersey Supreme Court noted that "J. McIntyre held both United States and European patents on its recycling technology" and "the U.S. distributor structured its advertising and sales efforts in accordance with J. McIntyre's direction and guidance whenever possible, and [] at least some of the machines were sold on consignment to the distributor." *Id.* (internal citations and quotation marks omitted).

Justice Kennedy, in reviewing the Supreme Court's jurisprudence on personal jurisdiction, recognized that a "defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted its goods will reach the forum State." *Id.* at 2788. Furthermore, "personal jurisdiction requires a forum-by-forum, or sovereign-by-sovereign, analysis." *Id.* at 2789. Justice Kennedy specifically recognized in the context of the case before the Court, "[h]ere the question concerns the authority of a New Jersey state court to exercise jurisdiction, so it is petitioner's purposeful contacts with New Jersey, not with the United States, that alone are relevant." *Id.* at 2790. He found that the facts recited above "may reveal an intent to serve the U.S. market, but they do not show that J. McIntyre purposefully availed itself of the

New Jersey market." *Id.*

Likewise, Justice Breyer found the facts insufficient to demonstrate that it was "constitutionally proper to exercise jurisdiction over petitioner J. McIntyre . . . ." *Id.* at 2791. Justice Breyer did not find the "something more" that is required under Supreme Court precedent. *Id.* There were no regular sales in New Jersey, no "special state-related design, advertising, advice, marketing, or anything else." *Id.* Furthermore, Justice Breyer found that J. McIntyre had not otherwise purposefully availed itself within New Jersey, and it had not "delivered its goods in the stream of commerce 'with the expectation that they will be purchased' by New Jersey users." *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–298 (1980)).

Justice Breyer did not join in the plurality opinion's reasoning because in his view, the case could be determined by the Court's precedents. *Id.* at 2791. Justice Breyer found it too strict to preclude jurisdiction in every case "where a defendant 'does not inten[d] to submit to the power of a sovereign' and cannot 'be said to have targeted the forum,'" especially in light of the issues presented by sales over the internet. *Id.* at 2793 (quoting *id.* at 2788). And he did not agree with the New Jersey Supreme Court because its reasoning was too broad, subjecting a defendant to jurisdiction if it "knows or reasonably should know that its products are distributed through a nationwide distribution system that *might* lead to those products being sold in any of the fifty states." *Id.* (citation omitted). Justice Breyer was concerned that such a blanket rule failed to take into account the size of the manufacturer, the distance of the forum, and the number of items that end up in the particular forum. *Id.* He continued, "the fact that the defendant is a foreign, rather than a domestic, manufacturer makes the basic fairness of an absolute rule yet more uncertain." *Id.* at 2793–94.

The contacts ABISS has with Tennessee do not rise to the level of those J. McIntyre had with New Jersey. There are some differences, but those differences shift the balance further away from finding that ABISS purposefully availed itself of Tennessee's laws in particular. Here, ABISS does not have a United States distributor, but rather, it supplies its product to Coloplast A/S, which independently chooses to market in the United States. ABISS's representatives do not attend trade shows or conferences in the United States, and there is no evidence that it directed the sales or marketing efforts of the distributor, Coloplast A/S.

Viewing the allegations in the light most favorable to the plaintiff, there are nonetheless no facts indicating that ABISS has targeted Tennessee in particular. The allegations do not suggest anything more than the possibility that ABISS's products *might* be sold in Tennessee. Furthermore, there is nothing in the record indicating the extent to which the final products were sold in Tennessee. Factual allegations arising to a greater level than this were found insufficient to exert personal jurisdiction over a defendant by a majority of the Court in *J. McIntyre*. 131 S. Ct. at 2788 (Kennedy, J., plurality) ("[A]s a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."); 131 S. Ct. at 2793 (Breyer, J., concurring in judgment) (disagreeing with the proposition that a defendant that "'knows or reasonably should know that its products are distributed through a nationwide distribution system that *might* lead to those products being sold in any of the fifty states'" is subject to personal jurisdiction for a products-liability action (quoting *Nicastro v. McIntyre Mach. Am.*, 987 A.2d 575, 592 (N.J. 2010)). ABISS has not directly shipped any finished product to national retailers with stores in Tennessee. Rather, Coloplast A/S takes delivery of the mesh in France and arranges for it to be shipped at Coloplast A/S's expense to various other places. Furthermore, ABISS has no input on the sale and marketing of its product after Coloplast A/S takes delivery.

Thus, the facts favor a finding that any contacts with Tennessee were a result of ABISS setting its products adrift, which is not enough for this court to exercise personal jurisdiction over it.

The plaintiff relies in part on *Tobin v. Astra Pharmaceutical Products, Inc.* in support of her argument that ABISS is subject to personal jurisdiction anywhere in the United States, including Tennessee. 993 F.2d 528 (6th Cir. 1993). However, at least one court has recognized *Tobin* as being abrogated by *J. McIntyre*. *See, e.g.*, *LeBarre v. Bristol-Meyers Squibb Co.*, No. 06–6050, 2013 WL 144054 at *7 (D.N.J. Jan. 11, 2013). *Tobin* and *J. McIntyre* used similar reasoning to analyze the issue of personal jurisdiction, but where *Tobin* found that personal jurisdiction existed, *J. McIntyre* did not. *Compare Tobin*, 993 F.2d at 544 *with J. McIntyre*, 131 S. Ct. at 2786 ("[A]n independent company agreed to sell J. McIntyre's machines in the United States. J. McIntyre itself did not sell its machines to buyers in this country beyond the U.S. distributor, and there is no allegation that the distributor was under J. McIntyre's control."). Thus, the mere existence of a distribution agreement is not enough on its own. Furthermore, *Tobin* runs contrary to the notion that "personal jurisdiction requires a forum-by-forum, or sovereign-by-sovereign, analysis." *J. McIntyre*, 131 S. Ct. at 2789. Because the fifty states and the United States are distinct sovereigns, "a litigant may have the requisite relationship with the United States Government but not with the government of any individual State." *See id.*[4]

Justice Kennedy recognized that "[p]ersonal jurisdiction . . . restricts 'judicial power not as a matter of sovereignty, but as a matter of individual liberty,' for due process protects the individual's right to be subject only to lawful power." *J. McIntyre*, 131 S. Ct. at 2789 (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). "[T]he stream-of-commerce metaphor cannot supersede either the mandate of the Due Process

---

[4] ABISS's FDA clearance only goes to establishing their connections with the United States generally rather than with the forum state, and as *Tobin* has been abrogated by *J. McIntyre*, it does not aid the plaintiffs in establishing personal jurisdiction in Tennessee.

Clause or the limits on judicial authority that Clause ensures . . . . [T]he Constitution commands restraint before discarding liberty in the name of expediency." *Id.* 2791. In light of *J. McIntyre* and the foregoing reasoning, I **FIND** *Tobin*'s reasoning unpersuasive.

### IV. Conclusion

For the reasons above, it is **ORDERED** that ABISS's Motion to Dismiss [Docket 28] is **GRANTED**. Because the plaintiffs cannot meet the personal jurisdiction test with respect to ABISS, I need not address the remaining arguments raised by ABISS.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: July 26, 2013

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE